IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BOBBY KENNETH WILLIAMSON**, *et al.* | : <br> : CIVIL ACTION NO. 1:23-CV-1781 <br> : |
| **Plaintiff** | : (Judge Conner) <br> : |
| v. | : <br> : |
| **JOHN E. WETZEL**, *et al.* | : <br> : |
| **Defendants** | : |

## MEMORANDUM

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983 regarding the conditions of confinement in Huntingdon State Correctional Institution ("SCI-Huntingdon"). The case was originally filed as a putative class action by three individual defendants on behalf of a class of SCI-Huntingdon inmates. After the court dismissed the class complaint and granted the remaining individual plaintiffs, Bobby Kenneth Williamson and Antonio Bundy,[1] leave to amend their individual claims, they filed two separate amended complaints. After screening the amended complaints, we will dismiss Williamson's complaint in part and dismiss Bundy's complaint in its entirety for failure to state a claim upon which relief may be granted.

---

[1] A third plaintiff, Nicholas Edwards, was dismissed from the case for failure to pay the filing fee or move for leave to proceed *in forma pauperis*. (Doc. 17).

I.      **Factual Background & Procedural History**

Plaintiffs filed their putative class action complaint on September 28, 2023, in the United States District Court for the Eastern District of Pennsylvania. (Doc. 1). The case was transferred to this district on October 30, 2023. (Doc. 3).

We dismissed the complaint for failure to state a claim upon which relief could be granted on May 20, 2024. (Docs. 19-20). We reasoned that class certification was clearly inappropriate because pro se prisoners cannot represent the interests of other prisoners in a class action. (Doc. 19 at 4-5). We then concluded that absent the allegations on behalf of the putative class, plaintiffs' individual claims were not stated with sufficient factual detail to satisfy the pleading requirements of Federal Rule of Civil Procedure 8. (Id. at 5-6). We granted plaintiffs leave to amend solely with respect to their individual claims. (Doc. 20 at 1). Williamson filed an amended complaint on September 17, 2024. (Doc. 27). Bundy filed a separate amended complaint on September 23, 2024. (Doc. 30).

A.      **Williamson's Amended Complaint**

According to the allegations in Williamson's amended complaint, he has been incarcerated in SCI-Huntingdon since December 2020. (Doc. 27 ¶ 1). The complaint alleges that SCI-Huntingdon's infrastructure is deteriorating due to its age and its proximity to the Juniata River. (Id. ¶¶ 22-23).

Williams's primary claims for relief relate to his alleged exposure to asbestos. The complaint alleges that sometime in the middle of 2021, shortly after the Pennsylvania Department of Corrections ("DOC") eased COVID-19 restrictions, defendant Rivello, SCI-Huntingdon's superintendent, issued a memorandum

approving crews of SCI-Huntingdon employees and inmate maintenance workers to begin renovations in the prison, which included removal of asbestos, lead paint, and mold. (Id. ¶¶ 55-57). The prison's facility maintenance manager, who is named in the complaint as a John Doe defendant, purportedly failed to display signs warning of the presence of asbestos during these renovations. (Id. ¶ 64). The facility maintenance manager allegedly failed to properly dispose of asbestos during the renovations. (Id. ¶ 65).

Pursuant to the orders of Rivello, the facility maintenance manager, and defendant Holms, the prison's maintenance supervisor, defendants Banks, Price, and McMullen allegedly began a process of "scrap[ing] and paint[ing]" Williamson's housing unit. (Id. ¶ 67). During this process, a crew supervised by Holms allegedly scraped material containing asbestos and lead paint from the walls of approximately five to ten cells in the housing unit. (Id. ¶ 68). Holms purportedly failed to post asbestos warning signs while the work was being done. (Id. ¶ 69). There was also purportedly no ventilation or filtration system in place to remove asbestos from the air. (Id. ¶ 70). Defendant Davis, the prison's correctional health care administrator, allegedly observed the conditions of the unit every day while the work was being done, because his office was located at the back of the housing unit. (Id. ¶ 73). The complaint alleges that Holms allowed workers to continue wearing the clothes they wore to remove asbestos as they moved throughout the unit, which purportedly led to additional asbestos exposure for Williamson and other inmates in the unit. (Id. ¶ 78). The exposure allegedly caused Williamson to experience breathing difficulties and nosebleeds. (Id. ¶¶ 77-78).

The amended complaint alleges that on July 10, 2023, the facility maintenance manager installed six "large semi-industrial size fans" on Williamson's housing unit, but did not evacuate the unit prior to the installation, which resulted in Williamson being exposed to asbestos. (Id. ¶¶ 80-82). The facility maintenance manager also purportedly turned on the fans without first clearing the air of asbestos, which led to additional exposure. (Id. ¶ 82). This exposure purportedly caused unspecified injuries to Williamson's skin, eyes, and nose. (Id. ¶ 83).

The amended complaint asserts that Williamson was exposed to asbestos again on February 22, 2024, when workers drilled holes in the wall of his housing unit and did not take preventative steps to stop the spread of asbestos in the unit. (Id. ¶ 115). Williamson purportedly inhaled asbestos during this process. (Id. ¶¶ 118-26). He requested medical attention and was treated by Gabriel Nalley, a physician's assistant in the prison. (Id. ¶ 127). Nalley diagnosed him with swelling in his nostrils and prescribed a nasal spray. (Id.) Nalley also purportedly noticed debris in Williamson's eye and referred him for an appointment with an ophthalmologist. (Id. ¶¶ 129-30). The ophthalmologist subsequently diagnosed Williamson as having damage in both eyes and prescribed him eye drops. (Id. ¶¶ 131-33). The complaint asserts that Defendant Rivello destroyed video footage of the February 22, 2024, incident. (Id. ¶ 134).

The amended complaint also asserts that Williamson has been exposed to harmful lead paint and black mold. (See generally id. ¶¶ 31-35, 40-54, 90-94). Williamson alleges that moisture in his cell has caused black mold to grow on and around the toilet. (Id. ¶¶ 31-32, 35). Defendant Price, a correctional officer in the

prison, purportedly tried to remove the mold from the cell by spraying a solution on it in May 2023, but this solution purportedly was not effective. (Id. ¶¶ 85-86). The complaint avers that as of September 10, 2024, Williamson continues to have mold in his cell that "affect[s]" his "breathing and ability to smell." (Id. ¶ 87). Sometime after this date, defendant McMullen purportedly submitted a work order for Williamson's housing unit to be "scrapped and repainted" in an effort to remove the black mold. (Id. ¶ 90). The amended complaint does not state whether this work has been completed or whether it successfully removed the black mold.

In addition to the specific claims of wrongdoing by defendants Rivello, Banks, Price, McMullen, Holms, and the facility maintenance manager, the amended complaint alleges in conclusory fashion that several supervisory defendants failed to implement policies and procedures to mitigate the presence of asbestos, lead paint, and mold in the prison. (See generally id. ¶¶ 40-54, 91-94). Specifically, the amended complaint alleges that: (1) the correctional institutional safety manager failed to develop a "local respiratory protected program procedure"; (2) Rivello failed to implement a "local confined space program"; (3) the facility maintenance manager "failed to supervise confined space entrance"; (4) the chief of the safety and environmental protection division "failed to maintain employee safety and occupational health features relative to asbestos. . ."; (5) the chief of the safety and environmental protection division "failed to consult" and "failed to coordinate" with the heads of other departments regarding asbestos safety; (6) Rivello "failed to maintain overall responsibility" for lead paint removal; (7) Rivello and the facility maintenance manager failed to take sufficient steps to test materials

5

for the presence of lead paint; (8) all defendants failed to submit "an extraordinary occurrence report" regarding Williamson's exposure to asbestos; (9) the chief of the safety and environmental protection division "failed to maintain employee safety and occupational health features relative to asbestos containing material"; (9) defendant Wetzel, the former superintendent of the DOC, eliminated an "asbestos abatement program" that the DOC previously implemented; and (10) defendant Kauffman, SCI-Huntingdon's former superintendent, likewise eliminated the asbestos abatement program at SCI-Huntingdon. (Id. ¶¶ 42-53, 91-93).

The amended complaint alleges that after this case was filed, Williamson mailed "pipe wrappings containing asbestos" to the Eastern District. (Id. ¶ 108). Shortly after learning about this, SCI-Huntingdon officials allegedly placed him in the prison's Restricted Housing Unit ("RHU") and charged him with misconduct for misuse of the mail and sending hazardous materials through the mail. (Id. ¶¶ 111-12). The misconduct charges were referred to a hearing examiner, who found Williamson guilty of the charges and sentenced him to 60 days in the RHU. (Id. ¶ 177). The amended complaint avers that the charges were brought in retaliation for Williamson litigating this case. (Id. ¶¶ 173-80).

Williamson's amended complaint asserts state law claims for negligence and negligent supervision, deliberate indifference in violation of the Eighth Amendment, and retaliation in violation of the First Amendment. (Id. ¶¶ 136-80). He seeks compensatory and punitive damages. (Id. at 25).

6

**B.      Bundy's Amended Complaint**

According to Bundy's amended complaint, he was first transferred to SCI-Huntingdon in 2020. (Doc. 30 ¶ 1). The amended complaint alleges in conclusory fashion that the prison lacks sufficient ventilation, that there is black mold and asbestos in the prison, that officials retaliated against him for filing this case, that water in the prison is contaminated with bacteria and chemicals, that the prison's infrastructure is collapsing, that officials did not respond quickly enough to a fire in 2020, and that the prison is infested with rats, mice, and other vermin. (Id. ¶¶ 2-33). The amended complaint does not name any defendants, nor does it allege that any individuals were aware of the conditions of Bundy's confinement. (See id.)

## II.  Legal Standard

The Prison Litigation Reform Act authorizes a district court to review a complaint in a civil action in which a prisoner is proceeding *in forma pauperis* or seeks redress against a governmental employee or entity. See 28 U.S.C. § 1915(e)(2);[2] 28 U.S.C. § 1915A.[3] The court is required to dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See id.

---

[2] 28 U.S.C. § 1915(e)(2) provides:

**(2)** Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
 **(A)** the allegation of poverty is untrue; or
 **(B)** the action or appeal—
  **(i)** is frivolous or malicious;
  **(ii)** fails to state a claim on which relief may be granted; or
  **(iii)** seeks monetary relief against a defendant who is immune from such relief.

[3] 28 U.S.C. § 1915A provides:

**(a) Screening.**--The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
**(b) Grounds for dismissal.**--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--
 **(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
 **(2)** seeks monetary relief from a defendant who is immune from such relief.

### III. Discussion

Plaintiffs bring their constitutional claims under 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. 42 U.S.C. § 1983. The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a Section 1983 claim, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

A defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation. Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 289 (3d Cir. 2018). The defendant's personal involvement cannot be based solely on a theory of *respondeat superior*. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, for a supervisor to be liable for the actions of a subordinate, there must be allegations of personal direction or actual knowledge and acquiescence. Id.

Having reviewed Williamson and Bundy's amended complaints pursuant to the screening provisions of 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A, we will

dismiss Williamson's amended complaint in part and dismiss Bundy's complaint in its entirety for failure to state a claim upon which relief may be granted.[4]

### A. Williamson's Amended Complaint

Williamson's amended complaint asserts civil rights and state tort claims based on his alleged exposure to asbestos, lead paint, and mold. (Doc. 27). He additionally asserts a claim that defendant Rivello retaliated against him—for mailing pipe wrappings containing asbestos from his institution—by filing misconduct charges against him. (Id.) Several defendants are sued in both their individual and official capacities, while others are sued in only one capacity. (See id. ¶¶ 2-27).

#### 1. Official Capacity Claims

At the outset, we will dismiss all official capacity claims based on defendants' sovereign immunity under the Eleventh Amendment. DOC employees sued in their official capacities are entitled to sovereign immunity under the Eleventh Amendment from claims for damages brought pursuant to Section 1983. Downey v. Pa. Dep't of Corrs., 968 F.3d 299, 310-11 (3d Cir. 2020).

#### 2. Deliberate Indifference

Turning to the individual capacity claims, we first find that Williamson's amended complaint states a claim for deliberate indifference in violation of the Eighth Amendment based on his exposure to asbestos, lead paint, and black mold.

---

[4] The court has screened the amended complaints in the same opinion rather than severing them into separate lawsuits in the interest of judicial economy.

The amended complaint alleges that defendants Rivello, Banks, Price, McMullen, Holms, and the facility maintenance manager conducted several renovation projects in Williamson's housing block that caused him to be directly exposed to these harmful materials and did not take sufficient steps to prevent the exposure. Williamson also alleges that he suffered physical injuries from this exposure in the form of breathing difficulties, nosebleeds, and damage to his eyes. See, e.g., Fontroy v. Owens, 150 F.3d 239, 244 (3d Cir. 1998) (noting that plaintiff alleging civil rights violation based on exposure to asbestos must allege physical injury); see also Gonzalez v. De Lasalle, 703 F. App'x 62, 68 n.5 (3d Cir. 2017) (nonprecedential)[5] (noting that Eighth Amendment claim based on exposure to lead paint requires proof that the lead paint posed a risk of physical harm to plaintiff). Liberally construing these allegations, as we must, we find that Williamson has adequately pleaded a claim for deliberate indifference.

Williamson's deliberate indifference claim, however, will only be allowed to proceed against Rivello, Banks, Price, McMullen, Holms, and the facility maintenance manager, because the amended complaint fails to allege the personal involvement of any other defendants. All other defendants are either not mentioned in the amended complaint's factual allegations or are only mentioned in conclusory statements of policies and procedures that they purportedly failed to implement. (See Doc. 27 ¶¶ 42-53, 91-93). It is not alleged how these purported

---

[5] The court acknowledges that nonprecedential decisions are not binding upon federal district courts. Citations to nonprecedential decisions reflect that the court has carefully considered and is persuaded by the panel's *ratio decidendi*.

11

policy failures caused Williamson harm, nor is it alleged that the other defendants personally directed or acquiesced in the alleged civil rights violations committed by Rivello, Banks, Price, McMullen, Holms, and the facility maintenance manager. See Rode, 845 F.2d at 1207.  Allegations that defendants held supervisory roles in the DOC or SCI-Huntingdon are not by themselves sufficient to allege personal involvement, see id., and the amended complaint does not advance any other basis to establish the other defendants' personal involvement.  The deliberate indifference claim will accordingly proceed solely against defendants Rivello, Banks, Price, McMullen, Holms, and the facility maintenance manager.

### 3. Negligence

Williamson's amended complaint asserts individual capacity negligence claims against defendants Bickell, Brown, Rivello, Woods, Holms, Ferguson, and the project manager.  (See Doc. 27 ¶¶ 2-27).  To state a claim for negligence under Pennsylvania law, a plaintiff must allege (1) that the defendant owed him a duty of care; (2) that the defendant breached the duty; (3) that the defendant's breach caused the plaintiff injury; and (4) that the plaintiff suffered actual loss or damage as a result.  Brewington *ex rel.* Brewington v. City of Philadelphia, 199 A.3d 348, 355 (Pa. 2018)

Williamson's negligence claims against Rivello and Holms will be allowed to proceed for essentially the same reasons we allowed the deliberate indifference claim against those defendants to proceed.  The negligence claims against all other defendants will be dismissed.  There are no allegations of any direct actions by defendants Bickell, Brown, Woods, Ferguson, or the project manager that breached

12

a duty of care to plaintiff. The only action that any of these defendants allegedly took was defendants Bickell and Brown transferring Williamson to SCI-Huntingdon, (see Doc. 27 ¶ 96), and it is not alleged that Bickell and Brown knew or should have known that such a transfer would cause Williamson to be exposed to asbestos, lead paint, or black mold.

There are also no allegations supporting liability on a theory of *respondeat superior*. Defendants Bickell, Brown, Wood, Ferguson and the project manager allegedly hold the professional roles of deputy secretary of institutional operations for the DOC, director of the office of population management for the DOC, sergeant in SCI-Huntingdon, director of population management, and project manager, respectively. (Id. ¶¶ 4-5, 14, 19, 21). It is not clear from the defendants' roles or job descriptions that they had supervisory authority over any of the projects that purportedly exposed Williamson to harmful materials, and the amended complaint does not include any additional allegations to establish such supervisory authority. Hence, Williamson's negligence claim will be dismissed except to the extent that it is brought against defendants Rivello and Holms in their individual capacities.

    **4.**    **Retaliation**

Williamson's final claim alleges that defendant Rivello retaliated against him in violation of the First Amendment by initiating misconduct charges against him for mailing "pipe wrappings containing asbestos" to the Eastern District. (Doc. 27 ¶¶ 173-80). This claim plainly fails. It is clear from the amended complaint that Williamson committed the charged misconduct of mailing the pipe wrappings. Retaliatory misconduct claims fail when there is some evidence that the plaintiff

13

committed the underlying infraction. <u>See, e.g.</u>, <u>Nifas v. Beard</u>, 374 F. App'x 241, 244 (3d Cir. 2010) (nonprecedential) (holding that retaliatory misconduct claim fails when there is some evidence to support the misconduct charge); <u>Carter v. McGrady</u>, 292 F.3d 152, 159 (3d Cir. 2002) (holding that retaliatory misconduct charge failed because there was a quantum of evidence indicating that plaintiff committed underlying misconduct).

### B. Bundy's Amended Complaint

Bundy's amended complaint will be dismissed. The complaint does not name any defendants or even mention any individuals who could be liberally construed as defendants. (<u>See</u> Doc. 30). Given this complete absence of any allegations of personal involvement, the complaint fails to state a claim upon which relief may be granted.

### C. Leave to Amend

Before dismissing civil rights claims for failure to state a claim, courts must permit a curative amendment unless the amendment would be inequitable or futile. <u>Phillips v. Allegheny Cty.</u>, 515 F.3d 224, 245 (3d Cir. 2008). We will deny leave to amend the dismissed claims as futile. Both plaintiffs have had multiple opportunities to plead their dismissed claims in a manner that states a claim upon which relief may be granted and have failed to do so.

## IV. Conclusion

We will dismiss Williamson's amended complaint in part and Bundy's amended complaint in its entirety without further leave to amend pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A for failure to state a claim upon which

relief may be granted. The case will be allowed to proceed solely with respect to Williamson's deliberate indifference claim against Rivello, Banks, Price, McMullen, Holms, and the facility maintenance manager and Williamson's negligence claim against defendants Rivello and Holms. The Clerk of Court will be directed to serve the remaining defendants with copies of Williamson's amended complaint. An appropriate order shall issue.

                                            /S/ CHRISTOPHER C. CONNER
                                            Christopher C. Conner
                                            United States District Judge
                                            Middle District of Pennsylvania

Dated:    November 18, 2024